OPINION
{¶ 1} On November 16, 1999, plaintiff, Juanita Allen, was injured in an automobile accident proximately caused by the negligence of Joseph F. Mulbay. At the time of the accident, Mulbay was insured by Nationwide Insurance Company ("Nationwide") under an automobile liability policy with liability limits for bodily injury of $100,000. Plaintiff presented a claim for compensation against Mulbay. Nationwide eventually offered its liability limits of $100,000 in settlement of plaintiff's claim. With the knowledge and consent of defendant, Transportation Insurance Company ("Transportation"), plaintiff accepted Nationwide's offer and subsequently signed a full release in exchange for the $100,000.
{¶ 2} At the time of the accident, plaintiff was a resident of a facility owned and operated by National Church Residences ("NCR"). NCR was the named insured under a commercial general liability policy issued by Transportation. The policy does not include underinsured motorist ("UIM") coverage, nor was such coverage ever offered. Claiming that the $100,000 she received from Nationwide was insufficient to compensate her for the injuries she received in the accident, plaintiff filed a claim against Transportation for UIM benefits under the policy issued to NCR. Transportation denied the claim because it believed that plaintiff was not entitled to UIM benefits under the policy. Thereafter, plaintiff filed a complaint for monetary damages and declaratory judgment, seeking a declaration that: (1) the Transportation policy was an automobile or motor vehicle policy subject to the requirements of R.C. 3937.18; (2) plaintiff was an insured under the policy; and (3) by operation of law, plaintiff was entitled to UIM benefits in an amount up to the policy's liability limits. Transportation denied that the policy was an automobile or motor vehicle policy within the meaning of R.C. 3937.18 or that plaintiff was insured thereunder.
{¶ 3} The matter was submitted to the trial court on stipulated facts and cross motions for summary judgment. The trial court determined that the Transportation policy was not an automobile or motor vehicle liability policy for which an offer of UIM coverage was mandated under R.C. 3937.18; thus, plaintiff was not entitled to collect UIM benefits under the policy. Upon this conclusion, the court denied plaintiff's motion for summary judgment and granted Transportation's. From this judgment, plaintiff now appeals, advancing a single assignment of error, as follows:
{¶ 4} "The trial court erred in concluding that Defendant-Appellee's general commercial liability policy does not provide motor vehicle liability insurance coverage."
{¶ 5} By her assignment of error, plaintiff contends that the trial court erred in granting summary judgment in favor of Transportation. Under the assignment of error, plaintiff presents two issues for review. The first issue is whether the commercial general liability policy issued by Transportation constitutes a motor vehicle policy of insurance subject to the mandatory provisions of R.C. 3937.18. The second issue is whether plaintiff is an insured as that term is defined in the policy.
{¶ 6} In reviewing a trial court's summary judgment disposition, this court conducts an independent review of the record and stands in the shoes of the trial court. Dixon v. Professional Staff Mgmt., Franklin App. No. 01AP-1332, 2002-Ohio-4493, at ¶ 14. Pursuant to Civ.R. 56(C), summary judgment is proper when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183.
{¶ 7} The Supreme Court of Ohio has held that "[f]or the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmer's Ins. Group of Companies (1998),82 Ohio St.3d 281, syllabus. Herein, it is undisputed that the effective date of the policy at issue is November 1, 1999, and, as such, the H.B. 261 amendments to R.C. 3937.18, effective September 3, 1997, control the rights and obligations of the parties.[1]
{¶ 8} The relevant portions of R.C. 3937.18, as amended by H.B. 261, provide:
{¶ 9} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:
{¶ 10} "* * *
{¶ 11} "(2) Underinsured motorist coverage * * *.
{¶ 12} "* * *
{¶ 13} "(L) As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following:
{¶ 14} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
{¶ 15} "(2) Any umbrella liability policy of insurance * * *."[2]
{¶ 16} "Proof of financial responsibility" is defined in R.C.4509.01(K) as "proof of ability to respond to damages [in specified amounts] for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of the motor vehicle."
{¶ 17} Having determined that the H.B. 261 version of R.C. 3937.18
applies to the instant matter, we find that plaintiff's reliance upon such cases as Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541; Lemm v. The Hartford (Oct. 4, 2001), Franklin App. No. 01AP-251, conflict certified (2001), 93 Ohio St.3d 1475; Hurley v. Cincinnati Ins. Co. (Dec. 17, 1999), Butler C.P. No. CV98-09-1519; and Burkhart v. CNA Ins. Co. (Feb. 25, 2002), Stark App. No. 2001CA00265, appeal allowed (2002),96 Ohio St.3d 1438, is misplaced, as H.B. 261 superseded this case law. See Gibbons-Barry, supra, at ¶ 28; Dixon, supra, at ¶ 34; Uzhca v. Derham (Apr. 5, 2002), Montgomery App. No. 19106, appeal allowed (2002), 96 Ohio St.3d 1511; Burkholder v. German Mut. Ins. Co., Lucas App. No. L-01-1413, 2002-Ohio-1184, at ¶ 15, appeal allowed (2002),96 Ohio St.3d 1455; Pickett v. Ohio Farmers Ins. Co. (Jan. 14, 2002), Stark App. No. 2001CA00227, appeal allowed (2002), 96 Ohio St.3d 1473; Jump v. Nationwide Mut. Ins. Co. (Nov. 2, 2001), Montgomery App. No. 18880; Devore v. Richmond, Wood App. No. WD-01-044, 2002-Ohio-3965, at ¶ 42-43; and Gilcreast-Hill v. Ohio Farmers Ins. Co., Summit App. No. 20983, 2002-Ohio-4524, at ¶ 22.
{¶ 18} Plaintiff contends that the commercial general liability policy issued by Transportation is an "automobile or motor vehicle liability policy of insurance" by virtue of the coverage it provides for "parking autos" and "mobile equipment." The policy language upon which plaintiff relies provides, in pertinent part:
{¶ 19} "2. Exclusions
{¶ 20} "This insurance does not apply to:
{¶ 21} "* * *
{¶ 22} "g. Aircraft, Auto or Watercraft
{¶ 23} " `Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured. * * *
{¶ 24} "This exclusion does not apply to:
{¶ 25} "* * *
{¶ 26} "(3) Parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured;
{¶ 27} "* * *
{¶ 28} " `Bodily injury' or `property damage' arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of `mobile equipment.' "
{¶ 29} "Mobile equipment" is defined in Section V of the policy as follows:
{¶ 30} "12. `Mobile equipment' means any of the following types of land vehicles, including any attached machinery or equipment:
{¶ 31} "* * *
{¶ 32} "f. * * * However, self-propelled vehicles with the following types of permanently attached equipment are not `mobile equipment' but will be considered `autos':
{¶ 33} "* * *
{¶ 34} "(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
{¶ 35} "(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment."
{¶ 36} Initially, we note that this court, following Jump, supra, has determined that amended R.C. 3937.18(L)(1) significantly narrowed the scope of insurance policies that must include UIM coverage as compared to the interpretation of previous versions of the statute. Dixon, supra, at ¶ 34. In particular, we stated that the "specifically identified" language contained in R.C. 3937.18(L)(1) requires that motor vehicles be "precisely, particularly and individually identified" in order to meet the statutory definition. Id., quoting Burkholder, supra. In so finding, we noted that we were not guided by the dicta in Davis v. State Farm Fire Cas. Co. (Dec. 18. 2001), Franklin App. No. 00AP-1458, in which it was suggested that R.C. 3937.18(L)(1) did not require the makes, models and serial numbers of motor vehicles. See, also, Gibbons-Barry, supra, at ¶ 44; Lane v. State Auto Ins. Cos., Miami App. No. 2002-CA-10, 2002-Ohio-5128, at ¶ 19.
{¶ 37} In this case, neither the declarations page nor the policy itself "specifically identify" any motor vehicles. Thus, the policy does not meet the requirements for proof of financial responsibility set forth in R.C. 3937.18(L)(1). See Gibbons-Barry, supra (holding a homeowner's policy that identifies the affected motor vehicles only as those "owned or operated by or rented or loaned to an insured" is not an "automobile or motor vehicle liability policy" under R.C. 3937.18(L)(1) where the policy does not specifically identify any motor vehicles); Burkholder, supra (holding a farmowner's policy that insures "residence employees" for all motor vehicles owned, maintained, operated, used, loaded, or unloaded at the farm does not satisfy the definition of "specifically identified" in R.C. 3937.18(L)(1) where the policy does not "precisely, particularly and individually" identify specific motor vehicles); Dixon, supra (holding a homeowner's policy that provides coverage for "bodily injury" to a "residence employee" arising out of and in the course of the residence employee's employment by an "insured" does not constitute an automobile or motor vehicle policy pursuant to R.C. 3937.18[L][1] where the policy does not "specifically identify" any motor vehicles; Jump, supra, and Reffitt v. State Automobile Mut. Ins. Co., Allen App. No. 1-02-38, 2002-Ohio-4885 (holding a commercial liability policy that provides coverage only for "hired" and "non-owned" automobiles is not an "automobile liability policy" under R.C. 3937.18[L][1] where the policy does not specifically identify any motor vehicles); Pickett, supra (holding that a general liability policy that provides incidental coverage for a narrow class of mobile equipment does not serve as proof of financial responsibility under R.C. 4509.01[K] where the policy contains no listing of specifically identified vehicles); and Ryan v. Smith, Crawford App. No. 3-02-17, 2002-Ohio-5581 (holding that narrow exceptions for "parking autos" and "mobile equipment," without any specifically identified vehicles, will not act to impose UIM coverage by operation of law).
{¶ 38} Moreover, this conclusion comports with the provisions contained in the Transportation policy issued to NCR. The exclusionary language contained within the policy expressly states that the policy is not designed to cover automobiles. Further, this court, as well as others, have construed identical "parking auto" exception language to provide coverage for parking of automobiles on or next to premises owned or rented by the insured only if those automobiles are not owned by, or rented or loaned to the insured — a scenario not applicable to the facts herein. See Carmona v. Blankenship, Franklin App. No. 02AP-14, 2002-Ohio-5003, at ¶ 55-56; Uzhca, supra; Devore, supra, at ¶ 45-46. In addition, "mobile equipment," as defined in the policy, refers to a limited class of equipment and vehicles not primarily designed to transport people on public roads; accordingly, such coverage does not convert the policy to an "automobile or motor vehicle liability" policy requiring UIM coverage to be offered. See Ryan, supra, at ¶ 12; Lane, supra, at ¶ 21-27; Pickett, supra.
{¶ 39} Because the commercial general liability policy at issue is not an "automobile liability or motor vehicle liability policy of insurance" within amended R.C. 3937.18, Transportation was not required to offer UIM coverage as part of the policy. Therefore, such coverage did not arise "by operation of law" because of any failure to offer such coverage when the policy was issued. Having so found, we need not address whether plaintiff was an insured under the policy.
{¶ 40} For the foregoing reasons, plaintiff's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK, P.J., and DESHLER, J., concur.
[1] Although the parties do not dispute the November 1, 1999 effective date of the policy, we note for the record that the declarations page of the policy indicates that the policy is a renewal. There is no indication as to the original issuance date of the policy. In Dixon, supra, one of the issues to be resolved by this court was whether the policy at issue in that case was governed by the pre-H.B. 261 version of R.C. 3937.18 or the version of R.C. 3937.18 as amended on September 3, 1997, by H.B. 261. The policy in Dixon was originally issued on May 21, 1995, and renewed annually thereafter, most recently on May 21, 1998. This court considered whether the annual renewals of the policy constituted continuations of the original policy, thus subject to the pre-H.B. 261 version of R.C. 3937.18, or new contracts of insurance, thus subject to the H.B. 261 version of R.C. 3937.18. Upon examination of the plain language of the policy, this court determined that the May 21, 1998 policy renewal constituted a new contract of insurance subject to the provisions of H.B. 261. Specifically, this court observed that the declarations page stated that the policy period began and ended at 12:01 a.m. Standard Time at the residence premises for 12 months beginning and ending on May 21, 1998. Citing Benson v. Rosler (1985), 19 Ohio St.3d 41,44, this court noted that "[p]olicies written for specific periods `may be construed as term policies rather than continuing policies.' " Dixon at ¶ 27. This court further noted that language in the policy specifying that the policy applied only to loss which occurred during the policy period shown on the declarations page suggested that the end of each policy period marked the end of the insurance contract. Id. This court also found that policy provisions regarding the insurer's option to renew or terminate the policy at the end of each policy period were indicative of separate contracts of insurance rather than a continuing policy. Id. at ¶ 28. Based upon these factors, this court concluded that each policy renewal constituted a new contract of insurance entered into by the parties, and accordingly, the H.B. 261 amendments to R.C.3937.18 became incorporated into the policy at its May 21, 1998 renewal date. Upon review of the policy at issue in the instant case, we find that the policy contains language similar to that considered in Dixon. In particular, the declarations page states that the policy becomes effective at 12:01 a.m. standard time on November 1, 1999 and expires at 12:01 a.m. standard time on November 1, 2000. Further, language in the policy specifies that the policy applies only to loss occurring during the policy period. In addition, the policy specifies that Transportation may "decide not to renew this Coverage Part." Accordingly, we find, pursuant to Dixon, that the November 1, 1999 policy renewal constituted a new contract of insurance and, as such, the H.B. 261 amendments to R.C. 3937.18
became incorporated therein. See, also, Gibbons-Barry v. Cincinnati Ins. Companies, Franklin App. No. 01AP-1437, 2002-Ohio-4898, at ¶ 27.
[2] We note for the record that subsection (L)(2) was amended on November 2, 1999, by S.B. 5 to read: "[a]ny umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section." R.C. 3937.18 was amended on October 31, 2001 by S.B. 97 to eliminate any requirement regarding the mandatory offer of uninsured and underinsured motorist coverage. Neither of these amendments are pertinent to the instant case.